EDWARD HAKALAU v. GEORGE F. DE LA NUX AND FRED PATTERSON, EXECUTORS UNDER THE WILL AND OF THE ESTATE OF RE-BECCA HOUGHTAILING HAKALAU, DE-CEASED, GEORGE F. DE LA NUX, HENRY DE LA NUX AND CHARLES DE LA NUX.

No. 2310.

SUBMITTED JUNE 17, 1939.                    DECIDED JUNE 19, 1939.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE LE BARON IN PLACE OF KEMP, J., DISQUALIFIED.

60

OPINION OF THE COURT BY COKE, C. J.

In April, 1925, Rebecca Houghtailing Hakalau, whose name at the time was Rebecca Houghtailing, owning valuable property, the greater part of which was real estate within the Territory of Hawaii, executed a deed of trust conveying to the Hawaiian Trust Company, Limited, as trustee, all property owned by her of every kind and description and wherever located, reserving to herself the possession and control during her lifetime of certain designated personal belongings. Following the habendum clause the trust document provides: "But in Trust nevertheless for the following purposes, that is to say, to lease, rent, assign, manage, invest and reinvest said property,

and collect and receive the issues, rents and income therefrom, and after deducting the necessary expenses and commissions as hereinafter set forth, to pay over said income to the grantor herein as long as she shall live. After the death of the grantor herein said trust shall continue as to the rest and residue of said trust estate remaining unconsumed and in the hands of said trustee, and the income therefrom shall be divided equally between and among my great-granddaughter Thelma Puanono Ware, my son Henry De La Nux, and my son George De La Nux, and upon the decease of either of said beneficiaries such share of income shall be paid to his or her issue surviving him or her, or to the child or children of any deceased issue; and in default of surviving issue, or upon the subsequent death of such issue without issue, to pay the share of the income of such deceased beneficiary to the survivor or survivors in equal shares; the issue of a deceased beneficiary taking the parents share by right of representation; and upon the death of the last survivor of said beneficiaries to divide my estate amongst the children or descendants of my said beneficiaries then living; such children of said beneficiaries, or their descendants to take by representation the share to which their parent would have been entitled. On the death of the grantor herein said trustee shall have full power and authority to pay all of her just debts and funeral expenses, and all Federal and Territorial inheritance taxes, and to settle all matters pertaining to her affairs without resort or application to any Court, and without administration on her said estate. PROVIDED, HOWEVER, and these presents are upon the express condition that the grantor reserves unto herself the right to change the beneficiaries herein named by a last will and testament to be hereafter executed should she so desire, or by a duly executed direction to the trustee

herein, such direction to be in writing, signed by her, and acknowledged before a Notary Public, but should she fail to execute a new will changing the beneficiaries as herein named, or to execute a direction to the trustee herein in that regard, then these presents to remain in full force and effect as written. In addition to the income from said trust estate the grantor herein further reserved to herself the right to call on her trustee herein named from time to time for payment of such an amount as she may need, or desire, in excess of income, not to exceed ten thousand dollars, such sum or sums to be paid to her by said trustee out of the corpus of the estate upon her application therefor. Should the necessity arise, of the existence of which necessity the trustee herein shall be the sole judge, said trustee in its discretion may permit the use by the grantor herein of any part of the corpus of said estate, or the proceeds thereof, for her benefit or comfort, in addition to the sum of Ten thousand dollars referred to in the preceding clause."

The trust company accepted the trust, assumed control of the property and administered it as directed. Shortly after the execution of the deed of trust the latter part of the year 1925, Rebecca Houghtailing married one Edward Hakalau and remained his wife until her death. On October 18, 1926, Rebecca executed her last will and testament. Omitting the first paragraph, the will provides: "SECONDLY: I direct that all of my just debts be paid, including the expenses of my last illness. THIRDLY: I do hereby give and bequeath unto my son, HENRY LEON de la NUX, the sum of One Dollar ($1.00). FOURTHLY: I do hereby give and bequeath unto my son, CHARLES de la NUX, the sum of One Dollar ($1.00). FIFTHLY: I do hereby give and bequeath unto my husband, EDWARD HAKALAU, the sum of Two Thousand

Dollars ($2000.00). SIXTHLY: I do hereby give, bequeath and devise unto my oldest son, GEORGE F. de la NUX, all of the rest, residue and remainder of my property, whether real, personal or mixed, and wheresoever situate, of which I may die seized and possessed; it being my intention that my said son, GEORGE F. de la NUX, shall have the whole of my estate of which I may die seized or possessed, with the exception of the bequests above made."

Rebecca died on July 19, 1927, and on October 4, 1927, her will was offered for probate in the circuit court of the first judicial circuit by George F. de la Nux and Fred Patterson, the executors therein named, and on August 5, 1933, letters testamentary were issued to them. Thereafter the executors made written demand upon Hawaiian Trust Company, Limited, trustee as aforesaid, to surrender to them all property held by it as such trustee. Confronted by this demand and being doubtful of its rights and responsibilities in the premises the trustee filed a bill for instructions in the circuit court of the first judicial circuit, the same being equity number 3433. The circuit court, by final decree, ordered the termination of the trust and directed the Hawaiian Trust Company, Limited, trustee, to transfer and surrender all of the trust property to the executors. These directions were complied with by the trustee. In July, 1935, Edward Hakalau, the widower of Rebecca, filed his petition in the circuit court of the first judicial circuit, at chambers in equity, praying that he might have "admeasured to him his curtesy of one-third of said real estate for the duration of his life." The present appellants were made respondents in that cause. The court rendered its decision granting the prayer of the petitioner and decreed that he "is entitled to a life interest in one-third of the real estate transferred in accordance

with the decree in Equity 3433." From this decree the appellants have been allowed and have perfected an appeal to this court. The material facts were agreed to by the parties in the court below.

The records in the circuit court in the probate proceedings and in equity 3433 have been incorporated into the record in the present appeal.

The circuit judge held, and we think rightly so, in both the equity suit and the present cause that Rebecca by her will exercised the power of appointment reserved to her in the trust deed. Under the rule of the common law the donee of a power must manifest an intention to execute the power. A power fails of execution if it be doubtful whether the donee intended to execute the power. If, however, it is apparently clear that the donee intended to execute the power and the transaction is not fairly susceptible of any other interpretation, then the power is deemed to be executed. The intention to execute the power must appear in its execution either expressly or by necessary implication (31 Cyc. 1121) and while other cases may exist the books usually speak of three classes of cases as a sufficient demonstration of an intention to execute the power (1) when the instrument which executes the power makes some reference to the power; (2) when the instrument which executes the power refers to the property which is the subject of the power or the instrument creating the power, or the authority for executing the power; and (3) *where the instrument executed by the donee of the power would have no operation except as an execution of the power.* (*Blagge* v. *Miles,* 3 Fed. Cas. 559; *Lane* v. *Lane's Adm'x.,* 4 Penne. [Del.] 368; 55 Atl. 184, 64 L. R. A. 849, 103 Am. St. Rep. 122; *Price* v. *Ouija Realty Co.,* 101 S. E. 819; *Standen* v. *Standen,* 2 Ves. Jr. 589.)

The present case falls within the third rule above set

forth. Rebecca neither at the time she executed the will nor at the time of her death owned any property other than her interest in the trust estate. Hence her will could have had no operative effect except upon the property of the trust and it must be presumed that her intention was to execute her power of appointment through the medium of her will. But we are unable to agree with the trial court that Rebecca, by virtue of her will, "drew, under her unlimited power of appointment, all her property which had been heretofore removed into the hands of the trustee, back into her estate." Nor can we concur in its conclusion that the trust realty became impressed with a curtesy right in favor of Rebecca's husband Hakalau. Our statute on curtesy in effect at the time is section 3000, R. L. 1925. It reads: "A husband, whether married in this Territory or in some other country, and residing in this, shall be bound to maintain, provide for and support his wife during marriage in the same style and manner in which he supports himself; and shall be liable for all the debts contracted by his wife for necessaries for herself or family during marriage, except such debts as may be contracted by her in the course of or in connection with any separate business which she may carry on as provided in section 3003. The husband shall be personally responsible for all the tortious acts of his wife done by and with his authority or consent, and for none other. In case the wife shall die first and intestate, then her property shall immediately descend to her heirs, but shall be in all cases, whether she die testate or intestate, subject to a life interest in the husband in one-third of the wife's real estate."

Rebecca, under her reserved power, appointed her son George to take the trust realty and thus excluded her estate from any right therein. As tersely said by Lord Sumner in *O'Grady* v. *Wilmot,* 2 A. C. 231, 272: "It [property in trust appointed by donee's will] never be-

came bona testatoris in any real sense; before the will spoke the testator was dead, and till the will spoke there was no appointment." Aside from a right reserved by Rebecca in her trust deed to withdraw during her lifetime any sums, the total of which should not exceed $10,000, from the trust corpus (a right which she never exercised), Rebecca's interest in the trust property was limited to a life estate. The existence of the power of appointment did not vest any estate in Rebecca nor did the exercise of the power in itself convey title. When Rebecca died and her will became effective the property vested in George by virtue of the trust deed which created the power of appointment. (See *United States* v. *Field,* 255 U. S. 257; *In re Huddy's Estate,* 84 Atl. 909.) Whether a power of appointment be exercised or not, those who ultimately take the remainders take through the trust deed. (*Re Trust of Dreier,* 32 Haw. 32; *Mercantile Trust Co.* v. *Bergdorf & Goodman Co.,* 173 Atl. 31.) The fact that Rebecca in her last will directed the payment of her debts is immaterial.

It is not uncommon under circumstances similar to those existing in this case for the property to go into the hands of the executor named in the will as a proper and convenient means to liquidate the debts of creditors. "Where the donee [of a power] dies indebted, having executed the power in favor of volunteers, the appointed property is treated as equitable, not legal, assets of his estate * * * and (in the absence of statute), if it passes to the executor at all, it does so not by virtue of his office but as a matter of convenience and because he represents the rights of creditors." *United States* v. *Field, supra.* (See also *Emmons* v. *Shaw,* 171 Mass. 410; *Olney* v. *Balch,* 154 Mass. 318.)

The direction in the will to pay the debts of the testator did not vest in Rebecca or her estate any right in the trust

realty nor did it affect or diminish the title of George thereto except in so far as the rights of creditors, if any, therein might be involved.

The trial judge refers to the decision in *Castle* v. *Castle,* 267 Fed. 521, which reversed this court in *Estate of Castle,* 25 Haw. 38, as being very informative. In the *Castle* case the court had before it the construction of our statute on dower (now R. L. 1935, § 4830). The curtesy right of a husband in the real property owned by his wife at the time of her death was not involved nor considered and while we fail to see what bearing, if any, the decisions have upon the issues of law involved here, yet we deem it appropriate and timely to record a brief history of the *Castle* case.

In that case, construing section 2977, R. L. 1915 (now R. L. 1935, § 4830), we held: "That the proceeds of the policies of insurance upon the life of Mr. Castle which were made payable to his executors, administrators or assigns and collected by them subsequently to his death, were not his movable effects in possession or reducible to possession at the time of his death and that the widow possesses no dower right therein." This was a reiteration of the rule announced in *Estate of Alexandre,* 19 Haw. 551. Upon removal of the case on appeal to the United States circuit court of appeals for the ninth circuit, that court held that under the statute in question Mrs. Castle was entitled to a dower right in the proceeds of the insurance policies. Application therefor having been made to the supreme court of the United States, a writ of *certiorari* was granted to review the decision of the circuit court of appeals. (See 254 U. S. 628.) It is regrettable that the parties obtaining the writ, for reasons which do not appear in the record but which may be readily surmised, failed to pursue their advantage and prosecute the writ to final judgment (see 254 U. S. 665) but in view of the fact that

the federal supreme court will only grant *certiorari* upon a showing that there is reasonable cause to believe the court below committed reversible error, it is apparent that the law involved in the *Castle* case must remain unsettled until such time as the supreme court of the United States shall have spoken. The only question at issue in the *Castle* case was the construction of a territorial statute. The decision, therefore, of the circuit court of appeals is the more surprising because of the rule repeatedly announced by that court to the effect that the construction placed upon a local statute by the highest court of the Territory of Hawaii will not be disturbed by an appellate court. (*Notley* v. *McMillan*, 16 F. [2d] 273; *Honolulu Rapid Transit Co.* v. *Wilder*, 36 F. [2d] 159; *Yoshizawa* v. *Hewitt*, 52 F. [2d] 411.) Indeed the supreme court of the United States in *Waialua Agricultural Co.* v. *Christian et al.*, 305 U. S. ......., has materially enlarged the scope of the rule, the court saying: "It is true that under the appeal statute the lower court [circuit court of appeals] had complete power to reverse any ruling of the territorial court on law or fact but we are of the opinion that this power should be exercised only in cases of manifest error. * * * In so far as the decisions of the Supreme Court of Hawaii are in conformity with the Constitution and applicable statutes of the United States and are not manifestly erroneous in their statement or application of governing principles, they are to be accepted as stating the law of the Territory. Unless there is clear departure from ordinary legal principles, the preference of a federal court as to the correct rule of general or local law should not be imposed upon Hawaii."

Being of the opinion that Rebecca Hakalau died without property of any kind, it follows that her husband Edward Hakalau can take nothing in the present proceeding and

that the decree appealed from must be reversed and the cause remanded and it is so ordered.

*Kemp & Stainback* and *Stainback & Massee* for appellants Henry Leon de la Nux and Charles de la Nux.

*R. J. O'Brien* and *R. Yamaguchi* for appellant George de la Nux.

*S. Landau* for appellant Fred Patterson.

*W. H. Heen* and *M. K. Ashford* for appellee.